## Macon County Telephone Company v. Maud West.

1. SAFE PLACE TO WORK—*duty of master to furnish.* Where it appears that the master knew for a long period of time that a window of the building in which his servant was employed was unfit for use and needed repair, a servant injured in consequence thereof who did not know of such state of disrepair is entitled to recover.

2. SAFE PLACE TO WORK—*right of servant to assume that master has furnished.* A servant is not required to make an examination to ascertain whether his master has furnished him with a safe place to work. Such fact may be assumed.

BAUME, P. J., dissenting.

Action on the case for personal injuries. Appeal from the Circuit Court of Macon County; the Hon. SOLON PHILBRICK, Judge, presiding. Heard in this court at the May term, 1904. Affirmed. Opinion filed October 14, 1904.

L. H. SHELLEY and C. E. SCHROLL, for appellant.

H. H. CREA and M. C. GRIFFIN, for appellee.

MR. JUSTICE GEST delivered the opinion of the court.

This is a personal injury suit brought by appellee, West,

against appellant. She was an employee of the company at the switchboard in its exchange, which was located in the third story of a building in Decatur. A window sash, which she was lowering to exclude the cold air from the room where she was working, fell and she was injured by the broken glass which struck her arm, inflicting a wound which has resulted in serious impairment of the use of her hand. The cause was tried by a jury which found a verdict for the plaintiff and judgment was entered thereon.

Several of the errors assigned are argued by counsel for appellant, the most important of which, as counsel state and as we also think, is the one fifthly argued, to wit, that the verdict is against the weight of the evidence.

There were two windows in the operating room where plaintiff was employed, both in the east side of the room. It was at the south window where the accident happened. Each window consisted of two sashes; the exact width and length of the sash are not shown by the evidence, but the lower sash was, as we conclude, from four to five feet long and somewhat less in width; there was but one pane of glass in each sash and that was plate glass; the weight of the lower sash was from thirty-five to forty pounds; the witnesses speak of it as heavy. The sash had been arranged for lowering and raising by ropes on each side of the window, running over pulleys and attached to weights; the weight that had been used was of sixteen pounds. It is stated by all the witnesses who testify on the subject, that the cord on the north side of the lower sash of the south window had been broken and had so remained for more than a year before the accident. The evidence is contradictory as to whether the cord on the south side of that sash was broken at that time. The evidence is without contradiction that the sash, when raised, was held up by a stick from two to two and one-half feet long, placed under the sash.

The accident happened on the 10th day of May, 1902. Plaintiff had been in the employment of defendant for a few days before that time, and for a few days previous to her employment, she had been in that room practicing on

the key boards to fit herself for the employment. On the evening of May 10, she and a Miss Scanlon were on duty in that room as the sole operators until the next morning. The sash had been raised by some one, and during the night the air in the room became chill and plaintiff went to the window to close it and exclude the cold air. According to her statement she placed her left hand under the sash, took out the stick with her right hand, and the window sash, proving to be too heavy for the strength of her arm, fell, and the glass was thereby broken and pieces of it struck and cut her arm a little above the wrist. She further states that previous to the accident she did not have occasion to examine or observe the windows; was not used to them; that she had walked to the windows and looked out; had never sat in the window, never lifted it nor handled the stick or cord, and never saw any one else handle the window and did not know the ropes were broken.

The testimony of several witnesses on the part of the defendant contradicts the plaintiff in divers particulars. That testimony is in substance that plaintiff had many times sat in the window when the sash was up and when it was down; that she had at times both raised and lowered the sash, sometimes alone, sometimes with the aid of others.

The evidence is that there was a stairway from the window in question reaching from the window to a telephone pole outside, and that this window and stairway was used by the lineman in the discharge of his business about the pole. The testimony of the lineman is that the cords on both sides of the sash were broken, the north cord and the south cord, and had been in that condition for a year and a half before the accident, and that he put on new ones a day or two after the accident under the instruction of the president of the company. Several witnesses, among them the president of the company, state that only the cord on the north side was broken.

The main contention of the defendant is that the weight of the evidence shows that the plaintiff had such knowledge of the window, its attachments, material, weight, and

method of use, that she must be held to have assumed the risk when she undertook to lower it. Upon that question the defendant asked and the court gave several instructions to the jury, one of which states that " the burden is upon the plaintiff to prove that defendant was negligent as charged and that she was using due care for her own safety and did not have an equal opportunity with defendant to know the danger incident to lowering the window."

Another states: "If you believe from the evidence that the said window did get out of the control of the plaintiff and fall by reason of its great weight, and that plaintiff knew of the great weight of said window, or by the exercise of reasonable and ordinary prudence on her part would have known of the great weight of said window, then she assumed the risk and cannot recover."

Another is as follows: " The court instructs the jury that if you believe from the evidence that the plaintiff had been in the employment of the defendant for several weeks and had been about and in the said premises for such time, and was familiar with the said window, and its weight, the method of raising and lowering it, the method of propping or holding it up by a stick, and the dangers, if any are shown by the evidence, incident to raising or lowering said window, or if you believe from the evidence that such time was sufficient to have enabled a person of ordinary observation to become familiar with such conditions, then, in that state of the proof, you are instructed that she assumed the risk incident to her undertaking in lowering the said window, and you should in that state of the proof, find the defendant not guilty."

And another is as follows: "The court instructs the jury that if you believe from the evidence that the plaintiff could by the exercise of ordinary care and prudence have avoided the injury, she cannot recover and you should in that state of the proof find the defendant not guilty."

It is seen from the above instructions that the matter of knowledge of the plaintiff of existing conditions and the legal result following therefrom was most fully and repeat-

edly presented to the jury. The amount of the verdict wholly fails to show any passion or prejudice in the jury, and when the entire case is considered we are inclined to think that the verdict, if not right, was at least not so clearly wrong that we would be justified in setting it aside. The window was long, wide and heavy; the pane was of plate glass and necessarily heavy; the difficulty of raising and lowering it had been recognized, and cords and weights had been used therefor, the usual, customary, if not absolutely necessary method in such case; at least one of those cords was broken and useless and had been for more than a year. The evidence certainly would justify the jury in finding that both cords were and long had been in that condition. The occupants of the room, servants of the defendant, were young women, not appearing from the evidence to have knowledge of the science or art of building, of the weights of different materials or the methods of adjustment and movement, but presumably having ordinary knowledge of the law of gravitation. The night of the accident was the first night work the plaintiff had done. She was to remain there until seven in the morning. Some one, not mentioned, had raised the sash. The night being cold it was rightful to lower it. If her testimony relative to her knowledge of the window be true, she was justified in attempting to close the window herself. If her knowledge of the window was such as testified to by defendant's witnesses, still it might be said, she was justified in attempting to close it. According to defendant's proof, plaintiff and all the other ladies, operators in the exchange, had raised and lowered the sash, and so far without accident, though the window was so heavy and hard to manage that sometimes two of the ladies would join their strength in so doing.

The defendant by its officers and agents knew, and had known for more than a year, that the window was out of order, needed repairs, and was unfit for use in such a room, occupied for such a purpose and by such employees. It is without question that, as a matter of fact, that window

was in a dangerous condition; both life and limb were threatened by the maintenance of a window of that weight, at an elevation of nearly three feet, merely by a stick placed under one end—a window used by the lineman going in and out on his stairway to the pole; used for ventilating purposes perhaps; when up, used naturally as a place in which to lean, look out and observe. It is not denied that appellant was negligent; it is only claimed in reply to that, that plaintiff knew it; that she knew the danger as well as the defendant knew it. We think there is room to question that proposition. She was employed to work in that room. She had a right to presume that the place of work and its surroundings were reasonably safe. She was not required to make examination to learn whether defendant had performed its duty. The defendant, by putting her at work in the room, gave notice to her that the window was safely adjusted, that she might safely remove the stick and lower it although the cord or cords were broken. Defendant was the employer, as to her, the owner, the builder, the mechanic, having peculiar knowledge of the entire situation, of the room and its surroundings, its fitness for the purposes in view, and of the employees and their fitness and ability to work safely in such a place so arranged. It is not a comparison of forces between men, but between a woman on one side and men on the other; between woman, whose nature, training, habits and entire course of life exclude her from careful consideration of mechanic science and art, and man, of whom precisely the reverse may be said. It is matter of common knowledge that women are but very indifferent judges of weight, size, distance, force and all such like elements, because their path in life leads them to the consideration of very different things; while men of all conditions are thrown in daily contact with all matters of that sort. When employers take into their service persons of youth and inexperience, the law permits and requires these matters to be taken into consideration and the same rule applies in this case, that is, the actual situation should be taken into consideration. Again, it is not for

C., P. & St. L. Ry. Co. v. Alderson.

this court to pass upon the weight to be given to the testimony heard by a jury in a trial court except in cases where it is clear to us that the jury through ignorance, passion or prejudice have failed to duly weigh it. Every trial judge, every lawyer trying causes, knows how often it happens that one witness' testimony on one side outweighs that of several in opposition, though the printed words of witnesses in opposition may seem greatly to outweigh that one. From this well-known and recognized proposition has arisen that rule everywhere approved, that a court of review will not disturb the verdict of a jury which has been approved by the trial court, except in a clear case of error.

It is urged that the court should have awarded a new trial on the ground of newly discovered evidence; that the court erred in refusing to admit certain evidence; that the instructions given for plaintiff were erroneous, and that the court erred in refusing certain instructions asked by defendant. We are satisfied with the action of the trial court in these several particulars, and not feeling ourselves justified in setting aside the verdict and judgment on the ground of insufficiency of evidence, the judgment will be affirmed.

*Affirmed.*

Mr. Presiding Justice BAUME, dissenting.